This is Township High School Dist. 211 Would Councilor Gilbert and the Mayor please step forward State your name, turn record, and how do you represent? I am Sally Scott, I represent Township High School Dist. 211 Okay, turn 9 to represent Gilbert and McDade Okay Thomas Hall, I represent the intervener Okay Alright, so now the appellant and the appellee made a request for oral argument You want to address the court as well? Yes Alright, so this is what we're doing, we give each side 20 minutes a piece Appellant, you want some time for rebuttal? Yes, Your Honor Okay, so reserve, how much time do you want to reserve for rebuttal? I'll have, say 5 minutes I guess Okay, alright And then between the appellant and the intervener, you want to split up the time? I don't need a whole lot more time How much time do you need? I would say 8 minutes with 2 for rebuttal Okay, so there you go I would like 15 minutes of my time Okay, alright, 15 and then you get 8 Alright, no rebuttal Alright, okay, alright We got the brown on the slate, just one more thing Just remember that the microphone was not amplified, so keep your voices up loud and clearly Because I'm sure everybody wants to hear what you have to say And then it just records, okay? Are these lights indicating our time? We're not going to use the lights Okay, alright We're going to use the trap door Thank you Will you tell us when we reach our 15 minutes? I'm just not sure, I may be very good at keeping up with my time Don't worry Alright, would you state your name again for the record? Sure, may it please the court, my name is John Knight and I'm representing the plaintiff appellant, Nobo Madej Did you say John Knight? Knight, yes, K-N-I-T-H-T Alright, Mr. Knight, where is the welcome board? Come here Welcome board is shown by my client's testimony about the stigma that attaches to being told that she's going to be treated differently than other girls Essentially it is the basic kind of welcome board that the human rights act recognizes, treating someone differently Let me ask you this, how do you define a welcome board? We define a welcome board in terms of the definitions in the applicable statutes as the harm that cannot be recognized by damages That kind of serious harm of telling a student that she can't be treated like a girl during this period in which she's high school, that went a second way, it can't come back So that harm is, we believe, irreparable And the testimony from my client is clear how harmful it was for her to be told that she's not really a girl That she is going to be treated differently than the other girls That the school essentially doesn't recognize her for who she is The reason I'm asking, sorry to interrupt you, but the reason I'm asking that is because The reason here is that the child court did not grant the preliminary injunction And it's my understanding that your client is no longer a student at the school, has graduated and has moved on, correct? That's correct, your honor So pursuant to that counsel, Perch, Knepper, aren't these changed circumstances that would make this case moot? No, your honor, for three reasons We don't believe the case is moot because this is a case, this is a classic case in which the public interest exception to mootness should apply Because it raises questions of a public nature where definitive ruling is necessary to guide public officials in the future Including District 211, which has this rule applicable to other transgender students And it makes it, it does have other transgender students And the question is why are there no parties to this case, correct? I'm sorry? No students are not parties to this case That's right, your honor, but that's not required for the public interest exception to apply I have a question, in your report clause, you did not only include the client But you also indicated with regards to other possible students who may be discriminated based on gender related identity But that argument wasn't made at the trial court Well, your honor, the injunctive relief that we saw here was specific to my client But in addition to the public interest exception and its application to this case Showing that the case is not moot, there's two other grounds for why the case should not be found to be moot The second ground is that my client has a damage claim And so this court's ruling is going to impact my client's ability to get damages for the denial that occurred here It's also not moot because the human rights act has typically been, and states specifically in the statute That a trial court or the commission can grant raw relief Even when the student who's directly affected or the person who's directly affected by the relief Is no longer present before the commission And that kind of cease and desist order is something that the trial court could provide here As to the impact of this kind of rule on other transgender students So I asked her exactly, whichever way we rule, how is that going to change your client's ability to seek damages? Your honor, the human rights act provides both for injunctive relief, as I said, cease and desist orders That would help someone immediately, but also provides for damages So here, because my client was told that she can't be brought in like other girls She has both this irreparable harm, but she also has, as a result of being denied the use of that walkroom As well as, she has damages, and we're entitled to seek those damages for the time in which she was told She could not use the walkroom or could only use it in this limited way That is, in a way, that's different from the other girls in the school So, if we were to rule against your client, are you saying that your client wouldn't be able to obtain any damages in this case? If you were to rule against your client, are you saying that your client wouldn't be able to seek any damages in this case? I'm not saying that, your honor, because there are damages from the time period when she was told she couldn't use the walkroom at all But, it would certainly limit the damages, because there was a, I believe, two year period Certainly, at least a year when she was told she couldn't only use the walkroom in this limited way So, if this court were to rule that the human rights act is limited in the way that the district has argued Then, my client would not be able to seek damages for that time period But, during those two years, did she not waive utilizing the locker room and waive PE? I'm sorry, your honor, no, we don't know that she did She is not required to accept this kind of discriminatory option that the district provided for her I'm sure that would be like telling someone that, well, as we say, compared to telling someone that they can use the cafeteria But, they have to be limited to a certain area because of their disability status, for example People don't want to accept that kind of discriminatory provision So, you can imagine that a student would say, well, I'm just not going to use the cafeteria I'm going to take my option of eating at home and not eating in the cafeteria at all That's the way that's applied to me This is very similar to the 7th Circuit's ruling in the Whitaker matter, which we cited in our reply brief In which the 7th Circuit recognized that a student's refusal to use a gender-neutral facility, as that student was told he could Was not, did not waive, or did not mean that he was in some way conceding that he didn't have a right to use the boys' restroom As the 7th Circuit ordered the school district to provide for him Your Honor, we believe that the central issue in this case is the question of whether the Human Rights Act allows schools to limit students' use of gyms, cafeterias, locker rooms, or any other facility On the basis of gender identity, race, disability, or other protective characteristics under the Human Rights Act I think by doing that, they are providing the client with access They are providing the client with access to the locker room They are offering her limited access But the Human Rights Act does not say that a district can provide limited access The Human Rights Act says access And what has been done here is that my client is denied access because of who she is She's denied some forms of access As I said, it would be like telling a student that you can use, you can get into the cafeteria But we're going to tell you because you live with a disability, you're going to have to sit over there You're going to be away from the other students Or it would be like a district saying to students, oh you can get into the school gym, for example But we're going to make the students of one race or one gender sit in a certain part of the school gym That's discriminatory But counsel, doesn't 5103 of the Human Rights Act already allow for facilities to be segregated by sex And when they are distinctly private issues involved? It does, your honor, but we're not talking about, we're not in any way challenging that My client is a girl and the district recognizes her as such It's the interviewers who try to argue that she's not a girl at all But neither the district nor the definition of sex in the Human Rights Act supports that argument And plainly, the commission has addressed this issue in the Hobby Lobby case It's a decision in which the administrative law judge and the commission in affirming that ruling Found that when we're talking about someone who's transgender, the sex must be determined based on their gender identity To find otherwise would be to rewrite the Human Rights Act and essentially say that when it comes to private facilities People who are transgender are left out That's not what the earlier legislature did And that's not the proper reading of the statute And I think that the expertise of the commission, while this court is not bound by that It's certainly important to defer to that expertise And obviously the logic of the commission's ruling there Going back to access So there is question that they're providing access But you're indicating that it's a limited type of access So I have a question with regards to this limited type of access There's changing styles in the locker room One thing that is available to everybody, right? That's right And your client in her complaint Also with regards to the affidavit Indicates that probably would be using these changing styles Also out of modesty and so on and so forth So the providing access, what more is it that you're looking for there? Well, my client never indicated that she would use those private changing styles That's not what her intention ever was And the availability of those changing styles we think is a great thing The problem is the requirement that someone, because of who they are, because they're transgender, use them That is discrimination My client said that she would dress modestly That she would do it in a way many girls do now when they change their locker room They don't fully dress, that's rare for that sort of thing She would protect her modesty And that's what she intends to do But she did not intend to use these private changing areas Nor does she want to be forced to do so Even if she had chosen to do so The forcing someone, because of who they are, to do something different from the other students or the other girls Is the harm that the human rights act does that And as a matter of fact, it's the same That's where the full and equal enjoyment comes from That's where full and equal enjoyment comes from But we believe that full and equal enjoyment is no different than a denial of access It's a denial of access So either of the two together, correct? Well, we have used full and equal enjoyment We believe that access to Sorry, that we believe that access to a facility As provided in the jurisdictional section That is focused on schools Amounts to full and equal enjoyment That they're no different It was simply a shorthand way of talking about The full and equal enjoyment That is the definition for all kinds of violations of the public accommodations provision of the human rights act Is there any authority that we can look at to determine that access equals full and equal enjoyment? Well, we point the court to a couple different We point to the court to a few different things So essentially there are three different reasons why The district is wrong in arguing that The access language in the jurisdictional section should be treated differently Than the full and equal enjoyment language in the public accommodations section The first is that Illinois courts have recognized Full and equal access, right? I'm sorry? The other section is full and equal access, not I believe it's full and equal enjoyment, Your Honor Full and equal enjoyment It's denial of full and equal enjoyment of the facilities, goods, and services of any place of public accommodation Whereas the language Do we need to look beyond the language of the statute to disagree with how the trial court interpreted it? We don't believe so because we believe that The denial of access to facilities, goods, and services is the same, has the same meaning And then under the authority that we cite from the Illinois courts Where the language has the same or similar meaning It should be given the same effect And so that is one argument And I can talk about some of those cases which you've helped me to Recognize this basic concept that even if the language is different Where it has the same meaning, it should be given the same effect The second argument is that if you read the equal access language in the jurisdictional section In this limited way that the district has argued for Then it undermines the basic purpose of the Human Rights Act Which is to prevent discrimination Because it allows discrimination in this way Which extends well beyond, as I've pointed out, well beyond locker rooms And well beyond people who are transgender to other protected categories The final reason why the language should be given the same reading Is that to read it differently would lead to an absurd result And we cite a number of cases where the courts have looked at Interpretations of sexual language In a DA, for example, from the Illinois Supreme Court in 2003 Says that a court is not bound by the literal language of the statute That produces a result inconsistent with a clearly expressed legislative intent Or that yields an absurd or unjust result We think that's what would result here By reading this language narrowly as the district has argued Can you give us examples of those absurd results? Well, sure, your honor So, as I talked about earlier The school cafeteria Telling someone they can use the school cafeteria But because they're of a certain disability status They're told no, you have to be in a particular part of that You can imagine the harm of that That's the harm that is prevented by the Human Rights Act Those students were given access to the cafeteria We can imagine the district arguing Well, there's not a problem there We gave them access to the cafeteria Telling them, oh, no, they're interested in this particular area Away from the other students There's not a problem there That's the kind of thing that could happen If the language is read narrowly in the district Limited to any of the protected categories I'm sorry? If access was... If limited access was applied to any of the protected categories That's right, your honor Race, religion Exactly It's your contention that that would... Absolutely There has been limitation on the district's interpretation Or the trial court's interpretation here Would apply possibly I don't think there's been... No one has contested that The district has essentially agreed that that would be the impact That has been argued that, no, that's not a problem Because there's federal law that protects students on the basis of race, for example Or disability But that's not what the legislature was doing in the past with the Human Rights Act It was not trying to fill in gaps It was providing comparable protections for ill citizens in all ways And so there's a great deal of overlap And it was intended to protect people in a different venue To allow people to file charges in the department And have hearings before administrative law judges Which provided something that federal court did not provide For people who were facing discrimination under federal law And in reality, the same would be true for students who are transgender With respect to federal law Title IX prohibits discrimination against students who are transgender Under federal law So it really just does not distinguish students who are transgender From students of a different protected category For some reason, this case was not brought under Title IX or the 14th Amendment Is that correct? It was not because this was what my client chose to do There are ways in which the charge process for students Is seen as beneficial for some people And we believe that Illinois law should not be more linked to federal law In protecting students who are transgender And it's important to embrace that protection here Because of all the harm that is caused to students and adults who are transgender When they face discrimination of this sort To tell someone, as Melinda does, that she isn't really a girl That she has to be treated differently because she's transgender So that is the essential basic harm that the Human Rights Act was focused on preventing And the limited argument that is being made Or the argument for a limited interpretation that is being made here Would cause serious harm to not only transgender students But students who are living with disabilities of other protected categories, for example Going back to the previous point, you cited A minor Can you explain how the case of A minor supports your position that it's not moot? Sure, that was a case in which the specific issues that were facing the person who brought the case The particular minor, were concluded There was no longer any impact on that student from the court's ruling But the court decided that it needed to address that issue because it was going to come up again And it decided, you know, there were two bases for the decision It decided both because this issue was going to come up again And there would need to be guidance for public officials But also in that particular instance, the issue was going to be a short time period So it would be hard to necessarily get a deal decided during that time period That is just an alternative ground for deciding the case It is not essential to the application of the public interest exception The public interest exception can apply even where the issue isn't one of that particular short nature The reality is, of course, students do graduate And these issues come up for students in high school To tell someone, as with my client, that they're going to be unable to get the relief Is harmful because it is hard to get a ruling in that kind of a quick turnaround So the reason I ask is that A minor, the Supreme Court addressed the issue Because they indicated that there were two orders entered And one of the orders was still kind of binding on the newspaper Because the newspaper indicated that eventually they were going to want to publish the minor's name And because the February order still was applicable, the Supreme Court said that the issue wasn't moved But here we don't have that type of a situation We have an order that's still binding on either of the parties I agree with you that that was a factor that was considered in the A minor case But it was not an essential factor to the court's basic ruling in the application of the standard The standard came from earlier cases It's been applied in a number of cases in addition to inwardly minor And what is essentially one of the factors that I talked about earlier That it be a policy issue that's likely to occur And where the public officials need guidance And finally this issue fits into that standard Because schools are facing this issue I mean the Whittaker case in the Southern Circus is yet another example Of course that's from Wisconsin But here we have law explicitly specifically prohibiting discrimination against people because they're transgender But we don't have clear guidance on that issue From an appellate court We do have some commission rulings Although not on this specific issue Of whether you can limit someone's use of a school facility That issue is going to come up not only for students who are transgender But it's going to come up again for other students In the various areas that I talked about earlier How does the class bar err in its application of the principles of statutory construction here? Which is one of the arguments you raised Well it erred in the interpretation of the statute Because it found that the jurisdictional language is different when we do not believe that it is We believe that the difference in words there does not change the ultimate meaning And under the cases that we cited Those two statutory provisions should be given the same meaning And that not doing so is going to, as I said, undermine the purpose of the Human Rights Act And lead to an absurd result That's the basic error of the trial court's ruling If you'd like to sum up, I know it took some of your time So we'll allow just some time for rebuttal But if you want to sum up at this point There are a number of different areas for me to talk about The court has looked specifically at this key issue about how to interpret the language We believe that that was the only basis for denying my client a preliminary injunction And that my client has shown irreparable harm And that as a result, this court should reverse the district court's refusal to or order denying my client a preliminary injunction And remand for proceedings consistent with the court's opinion Thank you. Thank you. Good morning. As I stated before, my name is Sally Scott And I'm arguing on behalf of Pontchart High School District 211 The first point I would like to make, Your Honor, is that this case is in fact moot We are on review on whether or not the trial court erred in denying a request for a preliminary injunction The requested relief in the preliminary injunction motion was to enjoin the district from denying the use of the girls' locker room During Ms. Madej's senior year at high school She has graduated She no longer attends high school The purpose of... What about the provision under the complaint? Program A of the complaint at the end of the workforce class Where they said it was not only for the con here But it was also raising these issues for other students who may be attending the high school or the district school The complaint stated that I do not believe that was in the motion for preliminary relief And that was focused... The sole focus on the preliminary relief was whether or not Ms. Madej would be entitled to locker room access as she defined it Without needing to change in the private changing stalls during her senior year That was the issue that the trial court heard on the preliminary injunction And no other students were considered or raised during that preliminary injunction hearing What about the public interest reduction? So I would give credence to that argument if we were not on a preliminary injunction But we are The proceedings before the trial court were rushed as proceedings for a preliminary injunction are There were a few affidavits and there was oral argument There was not an evidentiary hearing There was not extensive discovery There was not a full development of the record in the case So I do not believe that this is the type of case that is appropriate for the public interest exception Or meets the public interest exception Because there is not a definitive ruling as we are in a preliminary injunction stage And this court actually... It would require us to interpret the statute however It has not been interpreted in the state under this particular statute Or in a limited determination I agree to the likelihood of success But it still would require us to interpret it It would but I think that determination would be better after a full hearing on the merits So the trial court actually has the first opportunity to apply Developed record and developed facts to the law And this court already... What evidence would be needed in terms of... So we have multiple factual disputes Actually with Ms. Madej in terms of what has happened During her different years at high school And what access she was given and granted and not So there's actually a number of factual issues that have yet to be developed in this case Including the issue of damages which remains as well And would not that then serve the effect of not making this case moot The fact that there is the issue of damages So I don't believe that this case is moot to go back to the trial court  Because the relief that is requested cannot... Circumstances have changed She cannot be put back into high school PE So that's the issue that's on appeal So the issue of damages presumably will continue to go forward in the trial court So that's not moot I certainly concede that That issue has to be litigated yet But that issue has to be litigated after a full discovery process Both sides putting all their information and testimony and exhibits out there And the trial court deciding it So the damages are still very much in play But they're in play in the trial court What's before this court is simply whether the trial court erred in denying an injunction Which, as we know, is intended to address harm that cannot be repaired While waiting for a decision on the merit There is no injunction that the trial court can now enter in this case And that's the day it's graduated The epilogue is suggesting that the damages would be different For this period of time covered by the denial of the preliminary injunction Should we find that that denial was an error? Again, I think that should be for the trial court to decide first Whether damages are appropriate or not Based on a multitude of factors Including, obviously, the statutory interpretation But other factors as well Which include whether or not Ms. Madej has proven any harm or any damages have occurred to her And that all of those issues then may appear before this court on appeal After a decision on the merits Going back to the statute Since the theme of the Act is equality Can't this court read an inherent notion of full and equal In looking at Section 5102.2? I think, Your Honor, if the court were to do so It would ignore the plain language of the statute And that would be contrary to principles of statutory construction How so? Well, your first thing is to ascertain and give effect to the intent of the legislature The legislature deliberately used different language in two different provisions Secondary schools were not even in the statute originally In the public accommodation statute There was a list of primarily places of commerce As public accommodation provision applying to That was amended in 2007 to bring schools into that provision But it was limited, and the language specifically used The denial of access to facilities, goods, or services Had the General Assembly intended the exact same language to apply They simply could have added secondary schools Without any of the other language, modifiers, caveats That they included with it We have to assume that was deliberate by the General Assembly The statute doesn't say deny, it doesn't say limit or restrict It says deny Denial of access In your logic, then, what the school district is doing here  Oh no, I disagree with that, Your Honor Denial of access to facilities, Ms. Madej was given access Every dictionary definition I look up of access Has basically a definition of the ability to enter When I heard that you gave her access All right What we're saying is, based on your interpretation of the statute What does it say that you could limit and restrict? What it's saying is That you could deny That we cannot deny access, and we gave her access Right, but what does it say that you could limit or restrict? It doesn't say that we can't limit or restrict By the very limited requirement here That she represents that she will change in a private changing station I would also add that Ms. Madej filed a charge with the Department of Human Rights Over this Claiming that she was denied access to the locker room And the Department of Human Rights, after a thorough investigation Dismissed her charge for lack of substantial evidence And found the district had not discriminated against her Counsel, how can Section 5, 102 of the Act States that it's a civil rights violation for Any person on the basis of unlawful discrimination To deny or refuse to another full and equal enjoyment of facilities And services of a place of public accommodation And then in the subcategory Under 5, 102.2 It talks about the three categories When it goes to talk about jurisdiction It gives three examples of how Public accommodations in schools That jurisdiction over them would be limited to those three areas Simply because It's limiting the jurisdiction of the Department of Human Rights To Enforce Its prohibition against unlawful discrimination And its provision to provide for equal Enjoyment To three areas How does that suddenly make one of those three areas The equivalent of Full and equal enjoyment It's just a subcategory under the umbrella Looking at the statute the way the statute was written So I believe, Your Honor, that if the General Assembly had intended it Simply to mean the same thing They would have used the same language They would have said Full and equal enjoyment of the facilities Instead of denial of access I do assume that that choice To use different language was deliberate Then what do you base that on? Looking at the statute itself And the way it's written as the umbrella Saying This across the board In public accommodations Full and equal enjoyment But the department is limited in these three areas Dealing with enrollment Dealing with access to facilities And the final one Essentially dealing with the issue of bullying And so are you saying That if you were to take the issue of bullying Somehow that's the equivalent of Full and equal enjoyment Why single out the second one And say that it's the equivalent of Full and equal enjoyment When clearly the statute is just saying These are the three areas Where the department is limited to As far as education is concerned Sure So, Your Honor, first of all I would say that I don't intend to say that Denial of access and full and equal enjoyment Are the equivalent The Human Rights Act Just a moment there Let me clarify on that The Human Rights Act Lists places of public accommodation Where those places must provide For full and equal enjoyment of facilities For schools That provision has never applied to them And it has been the denial of access And to that extent I am saying The schools has never applied to them It's been there since 2007 The full and equal enjoyment has never applied to schools They've never been listed in there When schools were added to the act In 2007 Yes They were added in 2007 This is 2014 Then since the language talks about The denial of access to facilities Or services That the department's jurisdiction is limited to And it is always used Different language And as we know The jurisdiction of courts Is the same as the jurisdiction of the department So one derives from the other And the reason There's very little legislative history I've gone through it all There's very little legislative history On these provisions in the act There is one statement from Senator Culleton About wanting to leave most things To the Department of Education But otherwise There really isn't guidance So that is why we're going back To the principles of statutory construction Which is to ascertain and give effect To the intent of the legislature We know that when the legislature Includes particular language in one section But omits it in another That they presume The courts have to presume That they acted intentionally in doing so And that the General Assembly Does not put in language That would simply be superfluous So those are the principles So why is it not your interpretation That the statute says  To refuse full and equal enjoyment Of the facilities and services In the access to the facilities And services in the school? Why am I not reading that in Section 502.2? Because it's not That's the way it's structured But it's not included in there Actually, schools are really deliberately Have a very deliberate specific limitation That none of these other places of accommodation have And there is no reason for the legislature To include denial of access To facilities, goods or services In 102.2 If they simply meant The prescription to apply The listing of three areas Somehow limits the broad umbrella category That is under Which is full and equal enjoyment How do you go from the limiting That the limited category Somehow defines the broader umbrella category By the opening of 102.2 Which says In regard to places of public accommodation Defined in paragraph 11 of Section 5101 Which is school districts The jurisdiction of the department is limited to It's limited to three areas Right But those three areas How do you then say Those three areas limit Full and equal enjoyment? That's the fact that I'm trying to understand So I see that The department can only focus on three areas But how do those three areas Then go back and limit full and equal enjoyment? So when schools first put it in 2007 That denial of access to the facilities language Was actually in 5101 They simply moved it from 5101 to 5102.2 So that limitation was always in there It simply got moved to a different section And I maintain, Your Honor That that was done deliberately by the General Assembly Because Unless there's other entities Places of accommodation It was always there It was always under full and equal enjoyment It was moved to Under a category called Jurisdiction Delineating three areas That could be covered under full and equal enjoyment So how did that somehow change? And limit full and equal enjoyment? So it was always listed under A definition of places of public accommodation Which is what 101 is It's listing the places of public accommodation But it was always said it was only in regard to The denial of access Move on, counsel The day's counsel Has made comments About The trial court's reading of the statute And what the meaning of access is And how this would allow school districts To return to the era of Jim Crow laws Basically Or single out And discriminate against other students On a variety of bases As we pointed out in our brief There are in fact multiple other laws The federal law And state law That protects students from discrimination On the various bases that counsel mentioned But there's also an acknowledgement There has to be That school districts are different Than other places of commerce Listed in the public accommodation act And counsel repeatedly referred to School cafeterias And that students could be segregated In a school cafeteria Based on disability In fact That may occur That may occur for example For students with severe peanut allergies That are segregated In a cafeteria Because they cannot be In contact with other students Eating peanuts So they can't be Counseling purposes That's for Safety purposes But no That's for health purposes That's not what we have here Counsel peanut allergies They're not a protected category Peanut allergies can be a disability Actually So I'm just saying as an example It's an example Of why schools do need More discretion And potentially a reason Why the general assembly Are trying to meet different standards Are you calling her as a disability? No I'm not No I'm responding to the comment from counsel About people with disabilities And how they're treated in the cafeteria If it is for a medicinal purpose like that For the allergy In fact They may have different Levels of access That's not what we have here So that was responding to the counsel's argument On that There are these But otherwise The It's idea The Individuals with Disabilities Education Act Precludes school districts From discriminating against students With disabilities Title IX does Title VI does The US Constitution does Equal Protection Clause There are state laws as well The Illinois Human Rights Act That deals with civil rights violations And has the access to the courts That allows the public access to the courts Because those other Laws And entities exist That does not Somehow Excuse or limit Or allow One to avoid The Human Rights Act No Nor am I suggesting That we should avoid The Human Rights Act What I am however Positing Is that The consequences That counsel Is articulating Are in fact Not going to happen Because there are Multiple laws Including the Human Rights Act And the Illinois Civil Rights Act In place And frankly No government entity Is listed as a place Of public accommodation Both are not listed As a place of public accommodation Under the Human Rights Act The fact that they are omitted Does not mean That places of government And courts In Illinois Are discriminating Against individuals In the way That Mr. Knight Was suggesting Could happen Based on the trial court's Interpretation But to your Justice Hall's point I mean the The Act Was established And created To provide Freedom from Unlawful discrimination And And If I understand You correctly I think what you're suggesting Is that The legislature Put in a provision That basically Is contrary to The theme And the focus Of the Act The public accommodation provision In the Act Is limited in scope It just is As I said It does not apply To many, many places Of public accommodation It applies To particular ones That are listed As primarily Places of commerce It is Was never intended To be all-encompassing Or the legislature Would have said it that way So is a secondary school A place of commerce? No And secondary schools Are the one Non-commerce Related area That was added With different languages We've been discussing Anything further? I just wanted to Add That We understand And fully recognize That Students about Transgender Students And transgender Student access Have five emotions On all five We are We've heard From the today's council And how they believe That this is harmful To her You will hear From the intervenors That they believe Allowing access Is harmful To the students That they represent And the district Strives to balance Appropriate facility Access For transgender Students For the privacy And safeguard For all students The district Has 12,000 Students That it's Responsible for So it's not Just Ms. Medea At issue here It's also the interest Of all these Other students And the students Are minors They're 13, 15, 16 Year old Girls And the district So we're being sued Here in state court To Over the locker room Access We're being sued In federal court To keep all students Who are transgender Out of bathrooms And locker rooms What the district Put in place here Was agreed to And approved By the Obama Administration  This is the exact Same deal We struck with them Regarding another Transgender student That based on her Representation That she would Change In her Classroom And her Classroom In private Changing stalls Within the locker room She had locker room Access The office of Civil rights Department of Education Approved And agreed To that Arrangement That is the Arrangement That we are Providing here The department Of human rights Also agreed We were not Violating this Act When they Investigated The council First thing The district's Resolution was With the Department of Education Based on the Guidelines that Were put in Place in 2015 2016 And those Guidelines have Been rescinded As of 2017 How does This change In the Department of Education's Policies affect This case And the Access That the District has To provide So the Guidelines That was Withdrawn Actually Was Required Transgender Access So that Was Withdrawn So Transgender Status is Under the Current Administration Treated More Restrictively Than it was Under the Obama Administration So the Fact that It was Withdrawn Actually Would suggest That What We have In place Would be Considered That the Current Administration May consider We don't Have to Provide any Access Is Potentially What the Current Administration Would say The Obama Administration Position Was that Access needed To be Provided And yet Even under That Current      Say That The Current Administration Would Provide Access To All Of These Other Guidelines And rules And agencies That would Be there To protect Individuals In the Essence Of the Human Rights Act Would be Of concern To the Public And of Public Interest So the 7th Circuit Just very Recently Decided The Whitaker Case Where it Actually Granted a Preliminary Injunction To a Student Who Was Denied All Of The Requirements Of Freedom Access So the courts Certainly In Illinois In the 7th Circuit And elsewhere Actually There's been A number Of decisions Now the 3rd Circuit Just did Too Are actually Certainly Taking Positions Relating To Transgender Students That Are Contrary  The Concerns That You Are Raising That Is All Thank You Thank You Good Morning Members Of The Court My Name Is Tom Alp And I Represent The   In   Of Illinois And I Am Here To Contend That There Is Damages If That Does Go On And It Is Not New Then The Court Can Render An Absolute Authoritative Ruling  Any Issue Here The Question Is That The Court Is Not In A Position To Render An Absolute Authoritative Ruling On Any Issue Here The Question Is That The Statutory Interpretation Involves Factual Determinations It Is Our Contention That The Basic Premise Of The Plaintiff's Case Is That Gender Excuse Me I Am Having Difficulty Accepting That It Needs Factual Enlargement To Interpret The Statute At Least To Say Whether Or Not The Trial Court Was Correct In Finding That The Act Was Limited To A Few  Before It Was Needed For An Interpretation I Understand Your Point We Have Made A Second Argument Based On 5103 And It Exempts From Coverage Of The Act And  Exempts From Privacy Facilities And Sex Discrimination And It Is Our Intention That The Claimants Are Trying To Basically Eliminate The Distinction Between Sex And Gender Identity Which We Believe Is Inappropriate And Contrary To The Human Rights Act Those Two Words Have Severed Meanings And To Put Them Together To Basically Say Sex Doesn't Matter Anymore Once I Decide What My Gender Identity Is In Our View Is Contrary To The Illinois Human Rights Act If Such An Interpretation Were To Be Given It Is Correct But It Is Based Upon The Theory  Gender Identity And Sex Are Equal They Put An Expert Opinion In An Affidavit And If You Read A Very Well Recognized Gender Discovery Physician He Will Say That In General Terms To Affirm An Adolescent Child's Sexual Gender Affirmation But Isn't That Issue Really Moot Based On The District's Actions In This Case And They Basically Have Agreed In Terms Of The Gender Identity Here In Terms Of The Actions They Have Taken And Accommodations They Have Made To The Appellants Isn't That Just A Moot Point ? The Other Question In The Trial Court Is Whether Or Not That Appropriately Respects The Interests Of The Court ? The District 211 Has Cut The Two Issues And Says We're Going To Require A Boy To Undress In A Privacy Curtain But We're Not Going To Require The District 211 A Privacy Curtain But  Not Going To Require A In A Privacy Curtain  Not     To Require A  To Undress In A Going To Require A  To  Not Going  Require A Boy To